1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11    PEDRO PANTOJA,                              Case No. 1:22-cv-001127-CDB (SS)

12                   Plaintiff,                   ORDER GRANTING MOTION FOR
                                                  SUMMARY JUDGMENT
13             v.
                                                  (Docs. 14, 17, 18)
14    COMMISSIONER OF SOCIAL SECURITY,

15                   Defendant.

16

17          Plaintiff Pedro Pantoja ("Plaintiff") seeks judicial review of a final decision of the

18    Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

19    disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court

20    on the parties' briefs, which were submitted without oral argument.  (Docs. 14, 17, 18).  Upon

21    review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as

22    follows.[1]

23    **I.        BACKGROUND**

24          **A. Administrative Proceedings and ALJ's Decision**

25          On March 26, 2019, Plaintiff filed a Title XVI application for supplemental security income,

26    alleging a period of disability beginning that same day.  (AR 262-267).  Plaintiff's application was

27    _____

28          [1] On December 9, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge
      for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S.
      Magistrate Judge.  (Doc. 13).

1    denied initially and on reconsideration.  (AR 149, 172).  Plaintiff then filed a request for a hearing

2    before an Administrative Law Judge ("ALJ").  (AR 192-200).  On July 15, 2021, the assigned ALJ,

3    Debra L. Boudreau, held a hearing; Plaintiff attended with counsel, Lindsay Newsha, as did

4    vocational expert ("VE") David Perry.  (AR 38-78).  The ALJ issued her decision on August 3,

5    2021, finding Plaintiff not disabled.  (AR 12-37).  On August 10, 2022, the Appeals Council denied

6    Plaintiff's request for review.  (AR 1-6).  Thereafter, Plaintiff filed the instant action.

7        In her decision, the ALJ used the five-step sequential evaluation process promulgated by

8    the Social Security Administration for determining whether an individual is disabled.  (AR 16-18;

9    citing 20 C.F.R. 416.920(a)).  At step one, the ALJ found that Plaintiff had not engaged in

10   substantial gainful activity since his alleged onset date of March 26, 2019.  At step two, the ALJ

11   concluded that Plaintiff had the following severe impairments: degenerative disc disease of the

12   cervical and lumbar spine; degenerative joint disease of the bilateral hips; peripheral neuropathy;

13   obesity; major depressive disorder; and generalized anxiety disorder.  The ALJ also found that

14   Plaintiff had the following non-severe impairments: obstructive sleep apnea, carpal tunnel

15   syndrome, asthma, diabetes mellitus, mixed hyperlipidemia, right knee meniscal tear, vertigo,

16   marijuana dependence, hearing loss, gastroesophageal reflux disease, rectal bleeding, "mild" left

17   glenohumeral joint effusion, and an arthropathic left acromioclavicular joint.  (AR 18).  At step

18   three, after identifying these impairments, the ALJ found that Plaintiff did not have an impairment,

19   or any combination of impairments, that meets or medically equals the severity of one of the listed

20   impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 18-19).

21       The ALJ reached this determination by considering the four broad functional areas of

22   mental functioning listed in the "paragraph B" criteria.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

23   The first functional area is understanding, remembering, or applying information.  The second

24   functional area is interacting with others.  The third functional area is concentrating, persisting, or

25   maintaining pace.  Lastly, the fourth functional area is adapting or managing oneself.  The ALJ

26   found that Plaintiff had moderate limitations in the first three functional areas, and no limitation in

27   the fourth functional area.  (AR 19-20).

28       The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work

2

as defined in 20 C.F.R. § 416.967(b).  (AR 20-21).  The ALJ determined that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms but the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record.  (AR 21-27).  The ALJ proceeded to examine the medical opinions of record, finding each of them unpersuasive.  (AR 24-26).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (AR 27).  The ALJ concluded by discussing the VE's testimony and the Dictionary of Occupational Titles ("DOT"), finding that Plaintiff would be able to perform the requirements of jobs that exist in significant numbers in the national economy, namely callout operator, document preparer, and addressing clerk.  (AR 28-30).

The ALJ found Plaintiff had not been under a disability from March 26, 2019.  (AR 30).

**B.  Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.    STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not

4

disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

5

1     **III.    ISSUES AND ANALYSIS**

2          Plaintiff seeks judicial review of the Commissioner's final decision denying his application.

3    (Doc. 1).  Plaintiff raises the following issues:

4              1.     The ALJ erred by failing to resolve conflicts between the occupations

5                     provided by the VE, the DOT, and Plaintiff's RFC (Doc. 14 at 6-11); and

6              2.     Any remand for further proceedings should be limited to solely the findings

7                     made by the ALJ at step five based on the RFC (*id.* at 11-12).

8          **A.  Whether the ALJ Erred by Failing to Resolve Conflicts Between the Occupations**

9              **Provided by the VE, the DOT, and Plaintiff's RFC**

10         "An ALJ may take administrative notice of any reliable job information, including

11   information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  A "VE's

12   recognized expertise provides the necessary foundation for his or her testimony" and, accordingly,

13   "no additional foundation is required."  *Id.*  Because the Dictionary of Occupational Titles ("DOT")

14   is not comprehensive, "[i]ntroduction of evidence of the characteristics of specific jobs available in

15   the local area through the testimony of a [VE] is appropriate, even though the job traits may vary

16   from the way the job title is classified in the DOT."  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th

17   Cir. 1995).  Indeed, a VE might be more knowledgeable about a particular job's requirements due

18   to their experience in job placement or career counseling.  SSR 00-4p.  Therefore, a VE may be

19   able to offer more specific information about jobs or occupations than provided in the DOT.  *Id.*

20   The ALJ permissibly may rely on VE testimony regarding "(1) what jobs the claimant, given his

21   or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."

22   *Tackett*, 180 F.3d at 1101.

23         However, the ALJ cannot "rely on a vocational expert's testimony regarding the

24   requirements of a particular job without first inquiring whether the testimony conflicts with the

25   Dictionary of Occupational Titles."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  The

26   ALJ has an affirmative duty to inquire as to whether there are potential conflicts between the VE's

27   testimony and the DOT and direct an explanation from the VE regarding any such conflicts.  *See*

28   SSR 00-4p; *see also Massachi*, 486 F.3d at 1152-53.  The ALJ must determine whether any such

1    explanation is "reasonable and whether a basis exists for relying on the expert rather than the DOT."

2    *Massachi*, 486 F.3d at 1153.  In addition, neither the DOT nor the VE's evidence "trumps" the

3    other when there is a conflict.  Instead, the ALJ must resolve the conflict by determining if the

4    explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony

5    rather than the DOT information.  SSR 00-4p.

6         Even if a VE attests that her testimony is consistent with the DOT, "[i]f a conflict is 'obvious

7    or apparent,' this triggers the ALJ's obligation to inquire further … the focus of the conflict inquiry

8    is the 'essential, integral, or expected' job requirements set forth in the DOT."  *Lashaw O. v.*

9    *Comm'r of Soc. Sec.*, No. 24-CV-1461-W-SBC, 2025 WL 1482282, at *13 (S.D. Cal. May 23,

10   2025) (finding obvious conflict between DOT definition of housekeeper job, where common sense

11   and real-world experience demonstrated majority of tasks required regular standing and walking,

12   and RFC that plaintiff sit for five minutes every thirty minutes).

13                    *i.  Parties' Arguments and Analysis*

14        Plaintiff asserts that the ALJ failed to identify conflicts between the VE's testimony and the

15   DOT, as the occupations set forth in the decision could not be done by an individual with Plaintiff's

16   RFC, or do not correspond to a significant number of jobs in the national economy.  (Doc. 14 at 7).

17   Plaintiff argues that the job of callout operator, set forth by the VE during the hearing, exceeds both

18   the RFC's social interaction limitations and its limitation to "simple, routine tasks requiring little

19   to no judgment" as it requires a Reasoning Level of three, which involves problems with several

20   variables and the ability to understand and carry out detailed instructions.  *Id.* at 8-9.  Plaintiff

21   contends that the job of document preparer exceeds the RFC as it, too, requires a Reasoning Level

22   of three.  *Id.* at 9.

23        Plaintiff argues that the position of addressing clerk is "obsolete on its face" as it was last

24   updated in 1977 and "[a]ddressing envelopes by hand or typewriter is no longer a common practice

25   in modern workplaces," as confirmed by a study conducted by the "Social Security

26   Administration's own experts."  Plaintiff provides that the cited study found the "addresser job

27   obsolete" in 2011 and noted that it was doubtful said jobs existed in significant numbers in the

28   national economy.  *Id.* at 10-11.  Plaintiff asserts that, even if 15,000 such jobs existed in the

1  national economy, as found by the VE, this would not represent a significant number of jobs.  *Id.*

2  at 11 (citing AR 72 & *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014)).

3      Defendant does not contest Plaintiff's contentions and concedes that remand, pursuant to

4  sentence four of 42 U.S.C. § 405(g), is appropriate.  (Doc. 17 at 4).  A review of the ALJ's decision

5  and the hearing transcript confirms the represented findings at step five.  (AR 28-30, 71-77).  Thus,

6  as Defendant does not oppose Plaintiff on this issue and is in agreement with the requested relief,

7  the Court will find in favor of Plaintiff.  *See Yanez v. Comm'r of Soc. Sec.*, No. 2:24-CV-02285-

8  CSK, 2025 WL 2207421, at *4 (E.D. Cal. Aug. 4, 2025) (finding in favor of plaintiff on challenge

9  to ALJ's step five determination where defendant did not oppose and agreed remand was

10  appropriate).

11      **B.  Whether any Remand for Further Proceedings Should Be Limited to Solely the**

12          **Findings Made by the ALJ at Step Five Based on the RFC**

13                  *i.  Parties' Arguments*

14      Plaintiff asserts that where, "as here, a plaintiff challenges only the ALJ findings at step five

15  of the sequential evaluation process [], the Court is constrained to ruling on step-five issues only."

16  (Doc. 14 at 11) (citing *Brown v. Kijakazi*, 11 F.4th 1008, 1010 (9th Cir. 2001)).  Plaintiffs seek that

17  any remand order should clarify that remand is "for the sole purpose of making new step-five

18  findings based on the previously assessed RFC."  *Id.* at 12.

19      Defendant asserts that the remand order "should not interfere with the agency's ability to

20  make appropriate findings on remand based on the evidence."  (Doc. 17 at 4).  Defendant attempts

21  to distinguish *Brown v. Kijakazi*, noting that there the ALJ issued a partially favorable decision and

22  the parties agreed to a remand, but while the agency sought to revisit both the favorable and

23  unfavorable portions of the decision, the claimant sought that only the denial of benefits be

24  addressed, with the court concluding that the scope of remand would be limited to the unfavorable

25  portion of the decision.  Defendant argues that, unlike *Brown*, here the ALJ found that the Plaintiff

26  was not disabled during the entire period under consideration.  Defendant contends that while

27  "*Brown* limited the Court's remand to just the unfavorable decision that a claimant is not disabled,

28  nothing in *Brown* holds that a claimant can handpick the evidentiary findings within a decision that

8

1    he wants set aside." *Id.* at 5.

2        Separately, Defendant asserts that the ALJ previously adjudicated the period from March

3    26, 2019 (the application date), to August 3, 2021 (the decision date), but following any remand,

4    the adjudicated period will be from March 26, 2019, through the date of the new decision and

5    therefore, through to the present day and after.  Defendant contends that, thus, this later period will

6    result in evaluation of new evidence and, if such record development reveals improved functioning,

7    "the ALJ's hands would nevertheless be tied.  Similarly, if evidence developed on remand called

8    into question the ALJ's findings during the previously-adjudicated period, Plaintiff's reading of

9    *Brown* would bar the ALJ from making new findings." *Id.* at 6.

10       Defendant argues that "the law of the case doctrine applies only when a court has actually

11   decided an issue," and here, Plaintiff did not seek a ruling from this Court regarding the ALJ's

12   findings at steps one through four.  Thus, "there is no ruling concerning those findings that will

13   become the law of the case."  Defendant contends that "future ALJ hearing decision will cover

14   evidence from some two years that have not been previously adjudicated" and, because "the record

15   will contain significant development," the law of the case doctrine would not apply. *Id.* at 7-8.

16       In reply, Plaintiff asserts that the "law of the case doctrine applies to administrative

17   proceedings on remand the same way it would apply in any other case." (Doc. 18 at 3) (citing *Stacy*

18   *v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)).  Plaintiff argues that, in *Stacy*, the "court nonetheless

19   held that the law of the case doctrine would still apply to Stacy's case in the absence of new, highly

20   probative evidence," despite a protracted delay from "nearly 14 years" of appeals and remands. *Id.*

21   at 3-4.

22                           *ii.   Analysis*

23       Here, Plaintiff does not challenge the ALJ's findings prior to step five.  "The majority of

24   courts in this district addressing the same or similar issue have granted remand limited to Step

25   Five." *Yanez*, 2025 WL 2207421, at *4 (E.D. Cal. Aug. 4, 2025) (collecting cases and citing, *inter*

26   *alia*, *De Jong v. Comm'r of Soc. Sec.*, 2024 WL 4437190, at *3-4 (E.D. Cal. Oct. 4, 2024)).  This

27   approach gives credence to the Ninth Circuit's holdings that the relief a plaintiff seeks in the

28   complaint defines the scope of remand and that a court has "no authority to set aside, or to disturb"

1    elements of the ALJ's decision that a plaintiff did not challenge. *Brown*, 11 F.4th at 1009-1010

2    (9th Cir. 2021). Other courts resolving the same issue raised by the parties here aptly have noted

3    that "the broader principle that applies from *Brown* is that a claimant gets to choose what portions

4    of an ALJ's decision that the claimant wants to challenge and the Court is limited to the relief

5    requested by the Claimant." *Nevels v. Comm'r of Soc. Sec. Admin.*, No. CV-24-02121-PHX-DGC,

6    2025 WL 2586138, at *3 (D. Ariz. Sept. 8, 2025) (citing *De Jong*, 2024 WL 4437190, at *3); *see*

7    *also De Jong*, 2024 WL 4437190, at *3 n.2 (finding the same).

8       Defendant asserts that the law of the case doctrine should not be applied here given the

9    likelihood that any review and new decision by an ALJ on remand would involve updated evidence

10   that the ALJ would be unable to consider if remand is limited to findings at step five. Pursuant to

11   the law of the case doctrine, the ALJ may not reconsider findings prior to step five unless the

12   evidence on remand is substantially different. *Stacy*, 825 F.3d at 567; *see Nevels*, 2025 WL

13   2586138, at *2 ("Plaintiff does not challenge the ALJ's findings at steps one, two, and three … Nor

14   does Plaintiff challenge the ALJ's finding that she has the RFC to perform only sedentary work

15   with restrictions. Under the law of the case doctrine, these findings may not be reconsidered unless

16   the evidence on remand is substantially different."). However, the Court finds that an instruction

17   limiting the ALJ to reconsider the findings at step five through the date of the ALJ's decision will

18   sufficiently ameliorate Defendant's concerns. *See Yanez*, 2025 WL 2207421, at *4 ("Defendant

19   states that it is inappropriate for a court to force an ALJ to ignore updated evidence on remand.

20   However, Plaintiff is only requesting that the Court 'not affirmatively empower the ALJ to re-

21   adjudicate unchallenged findings through the date of the last decision.' As outlined below, the

22   Court will instruct the ALJ to reconsider the Step Five finding through the date of the ALJ's

23   decision, which will avoid the concern Defendant raises.") (citations omitted); *Nevels*, 2025 WL

24   2586138, at *4 ("But Plaintiff asks the Court to rule only on the relief requested in her complaint

25   and opening brief, which will not involve consideration of the time period after [the date of the

26   ALJ's decision]."); *De Jong*, 2024 WL 4437190, at *4 ("As set forth below, the Court will instruct

27   the ALJ to reconsider the Step 5 finding through the date of the ALJ's decision, which will avoid

28   the concern that Defendant raises.").

On September 3, 2025, Defendant filed a notice of supplemental authority, citing as relevant the recently decided case of *Velazquez v. Bisignano*, No. 24-3034, 2025 WL 2437493 (9th Cir. Aug. 25, 2025). (Doc. 19). In that case, the Commissioner conceded in the district court that an ALJ committed error at step three. Accordingly, the district court remanded the case for further proceedings and noted that Plaintiff's additional claim of error at step five was "moot." *Jacob I. v. Comm'r of Soc. Sec.*, No. 1:22-cv-05522-RMI, 2024 WL 1077324, at *2 (N.D. Cal. Mar. 12, 2024). In its remand order, the court directed the ALJ to reevaluate the plaintiff's RFC, and also, to consider issues raised in the plaintiff's briefing regarding the VE's testimony as necessary (presumably, the claimed step five error). *Id.* at *3. On appeal, the plaintiff argued the district court committed error by failing to address his challenge to the ALJ's step five analysis and sought an immediate award of benefits. *Velazquez*, 2025 WL 2437493, at *1. In its unpublished memorandum disposition, the Ninth Circuit panel affirmed the district court's remand order, noting that the plaintiff was not entitled to the immediate award of benefits because he had not obtained any favorable decision granting full or partial benefits. *Id.* at *2. The Court clarified that "[o]n remand, however, the ALJ must consider Velazquez's objection to the vocational expert's job numbers methodology." *Id.*

To the extent the Commissioner notices *Velazquez* for the proposition that it supports remand here for a full *de novo* hearing not limited to the single claim of error raised by Plaintiff (Step Five), the undersigned disagrees with that proposition. Both the district court and the Ninth Circuit in *Velazquez* directed the ALJ to consider anew the step five issue for which the plaintiff had sought relief in the district court in addition to the conceded error at step three. Neither the district court nor the Ninth Circuit granted the relief the Commissioner seeks here – an unlimited remand permitting *de novo* review.

Thus, the Court finds that remand is appropriate, limited to reconsideration of the ALJ's step five findings through the date of the decision.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 14) is GRANTED.

2.    This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for
further proceedings consistent with this decision.  The ALJ is directed to consider
whether there are a substantial number of jobs available that Plaintiff can perform
in connection with the findings at step five, through the date of the decision that
Plaintiff challenges herein.  The ALJ may not reconsider previous findings
unrelated to step five, such as redetermining Plaintiff's RFC.  However, this order
does not constrain the ALJ's decision-making role for any unadjudicated period.

3.    The Clerk of the Court shall enter judgment in favor of Plaintiff and against
Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:  __**September 26, 2025**__          _____

UNITED STATES MAGISTRATE JUDGE